# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Stephen J. Tamburo III,**
**Petitioner Below, Petitioner**

**vs)  No. 14-0287** (Morgan County 12-P-41)

**Karen Pszczolkoski, Warden,**
**Northern Correctional Center,**
**Respondent Below, Respondent**

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Steven J. Tamburo III, by counsel Nicolas Forrest Colvin, appeals the Circuit Court of Morgan County's March 13, 2014, order denying his petition for writ of habeas corpus. Respondent Karen Pszczolkoski, Warden[1], by counsel Benjamin F. Yancy, filed a response. On appeal, petitioner alleges that his constitutional rights were violated when the circuit court denied him habeas relief without holding an omnibus evidentiary hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the habeas court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2009, petitioner was indicted on fifteen counts of prescription drug fraud. In September of 2010, petitioner was indicted on one count of first-degree murder, one count of concealment of a deceased human body, three counts of forgery, and three counts of uttering. The State, thereafter, offered petitioner a plea agreement in December of 2010. Petitioner entered into an *Alford* plea agreement and pled guilty to first-degree murder.[2] The plea agreement further stipulated that petitioner understood that his guilty plea would result in a life sentence with a recommendation of mercy and stipulated that, in exchange for the guilty plea, the State would

---

[1]Pursuant to Rule 41(c) of the Rules of Appellate Procedure, we have substituted the respondent party's name with Warden Karen Pszczolkoski because petitioner is currently incarcerated at the Northern Correctional Center.

[2]*North Carolina v. Alford*, 400 U.S. 25 (1970). Under *Alford,* "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him." *Kennedy v. Frazier*, 178 W.Va. 10, 12, 357 S.E.2d 43, 45 (1987).

dismiss the remaining seven counts of the indictment and all fifteen counts from the April indictment. The habeas court sentenced petitioner to a life sentence with a recommendation of mercy in February of 2011.

On September 17, 2012, petitioner filed a pro se petition for writ of habeas corpus in the Circuit Court of Morgan County. Then on September 20, 2012, petitioner filed an amended petition for writ of habeas corpus alleging six grounds of error. He asserted that: (1) his plea was involuntary, (2) he was not mentally competent, (3) his trial counsel failed to assert an appeal, (4) the State made prejudicial statements to the habeas court, (5) that he received ineffective assistance of counsel, and (6) that his sentence was more severe than expected and excessive in nature.

In January of 2014, a status hearing was held on petitioner's petition for writ of habeas corpus, during which the habeas court scheduled the matter for an omnibus hearing on March 14, 2014. On March 13, 2014, the habeas court denied petitioner's petition for writ of habeas corpus without holding the previously scheduled omnibus hearing. The habeas court reviewed all of petitioner's claims in detail and found that he was not entitled to relief and that there was no need for an omnibus evidentiary hearing. It is from the March 13, 2014, order that petitioner appeals.

This Court reviews appeals of habeas court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

To begin, we find no error in the circuit court's denial of petitioner's petition for writ of habeas corpus without first conducting an omnibus evidentiary hearing. In support of his claim, petitioner argues that his counsel failed to provide him with effective assistance of counsel. Petitioner argues that the habeas court committed error in denying his petition for writ of habeas corpus without first conducting an omnibus evidentiary hearing on this ineffective assistance of counsel issue, thus depriving him of due process of law. We disagree.

Although petitioner asserts that his trial counsel was ineffective in representing him, he has not provided this Court with or articulated any analysis, argument, or facts to support his contention of how his trial counsel was ineffective. We have previously held that

> "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgement of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgement."

2

Syl. Pt. 2, *Benson v. AJR, Inc.*, 226 W.Va. 165, 698 S.E.2d 638 (2010) (quoting Syl. Pt. 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)). Mere allegations of ineffective assistance without more are insufficient for granting habeas corpus relief.[3]

Further, it is evident from West Virginia Code § 53-4A-7(a) that not every petitioner for habeas corpus relief is entitled to a full omnibus evidentiary hearing in every proceeding instituted under those provisions. Where the claims in the petition for relief are completely without substance or merit, the statute does not require a hearing at all and empowers the habeas court to deny the requested relief. *Id.* This is true for petitioner's claims on appeal, as he does not articulate any analysis, argument, or supporting facts as to why his trial counsel was ineffective. Upon our review and consideration of the habeas court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the habeas court. Our review of the record supports the habeas court's decision to deny petitioner post-conviction habeas corpus relief based on the ineffective assistance of counsel claim. Indeed, the habeas court's order includes well-reasoned findings and conclusions as to petitioner's claim of ineffective assistance of counsel. Given our conclusion that the habeas court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the habeas court's findings and conclusions as they relate to petitioner's claim of ineffective assistance of counsel and direct the Clerk to attach a copy of the habeas court's March 13, 2014, "Order Denying Petition For Writ Of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[3]The West Virginia Rules of Appellate Procedure Rule 6(b) requires that the record on appeal should be selectively abridged by the parties in order to permit the Court to easily refer to relevant parts of the record. Petitioner made allegations of ineffective assistance of counsel but he failed to include any selectively abridged parts of the record on appeal that were relevant to the claims of ineffective assistance of counsel.

IN THE CIRCUIT COURT OF MORGAN COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.
STEPHEN J. TAMBURO, III,
      Petitioner,
vs.
                                    CIVIL CASE NO. 12-P-41
EVELYN SEIFERT, Warden,               JUDGE LORENSEN
Northern Correctional Facility,      UNDERLYING CASE: 10-F-80
      Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pending before the Court is Petitioner's Motion for Post-Conviction Habeas Corpus filed by Petitioner, STEPHEN J. TAMBURO, III, amended by and through his counsel, Nicholas Forrest Colvin. The State of West Virginia has submitted an Answer to Petition for Writ of Habeas Corpus, by and through the Prosecuting Attorney of Morgan County, West Virginia. Because the issue is fully briefed, the Petitioner, through counsel, has informed the Court that he does not wish to file a rebuttal. Thus the matter is ripe for consideration. Upon careful review of the Petition, all papers submitted in support and opposition thereof, and all pertinent legal authorities, the Court finds as follows.

In April 2009, Petitioner, Stephen J. Tamburo, III, was indicted on 15 counts of Prescription Fraud. In September 2010, Petitioner was indicted on 8 counts to wit: Count I for Murder in the First Degree; Count II for Concealment of Deceased Human Body; Counts III, V, and VII for Forgery; and Counts IV, VI, and VIII for Uttering. The victim of the murder was the Petitioner's father, Stephen J. Tamburo, Jr. On December 3, 2010, the Petitioner changed his plea to guilty under *Alford* circumstances to Murder in the First Degree. At this point in the

1

proceedings, Defendant was represented by both Francine Phillips, Esq. and Deborah Lawson, Esq. of the Public Defenders Corporation.

A review of the record demonstrates that the Petitioner's change of plea was the result of a counseled and negotiated plea agreement. In return for his plea, the Petitioner would be sentenced to life in prison with the recommendation of mercy. The remaining seven Counts in the September 2010 Indictment would be dismissed, as well as all Counts in the April 2009 Indictment. The Petitioner appeared with counsel before the Court for a sentencing hearing on February 7, 2011, and was convicted of Murder in the First Degree under *Alford* circumstances and received a life sentence with a recommendation of mercy in accordance with West Virginia Code §61-2-2 and the plea agreement.

The Petitioner alleges six main grounds of error. Petitioner asserts that (1) his plea was involuntary, (2) he was not mentally competent at the time of the crime, (3) his trial counsel failed to assert an appeal, (4) the Prosecutor made prejudicial statements to the Court, (5) he received ineffective assistance of counsel, and (6) his sentence was severer than expected and excessive in nature. The Court has reviewed these claims in detail and finds that the Petitioner is not entitled to relief and that there is no need for an evidentiary hearing.

The first issue before the Court is whether the Petitioner waived all grounds relied upon in the instant action by failing to assert them in an appeal of the underlying case, 10-F-80. The postconviction habeas corpus statute, West Virginia Code §53-4A-1 may be applied to bar consideration of matters waived by petitioners.

> When any such contention or contentions and grounds could have been advanced by the petitioner before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or

2

in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, but were not in fact so advanced, there shall be a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds.

W. Va. Code § 53-4A-1. While, a petitioner presumptively waives any right to assert matters in a Habeas Corpus proceeding that could have been previously advanced in prior proceedings or in an appeal, the statute contemplates a "knowing and intelligent waiver," which cannot be presumed from a silent record. *Id.* The "record must conclusively demonstrate that petitioner voluntarily refrained from asserting known grounds for relief in the prior proceeding" in order to bar their consideration in subsequent proceedings. *Id.*

Here, the Petitioner asserts that his trial counsel failed to appeal the underlying conviction, despite the fact that it was based upon the Petitioner's plea. Accordingly, in the interest of justice and judicial economy the Court will not find that the Petitioner knowingly and intelligently waived any grounds not asserted by an appeal. Instead the Court will fully review all grounds raised in the instant Petition as well as the evidence and argument in support and opposition thereof.

The procedure surrounding petitions for writ of habeas corpus is "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." W. Va. Code § 53-4A-1(a); *State ex rel. Harrison v. Coiner*, 154 W. Va. 467 (1970). A habeas corpus proceeding is markedly different from a direct appeal or writ of error in that only errors involving constitutional violations shall be reviewed. Syl. Pt. 2., *Edwards v. Leverette*, 163 W. Va. 571 (1979).

3

Petitions for writ of habeas corpus are governed in part by West Virginia Code §53-4A-1. The habeas corpus statute "contemplates the exercise of discretion by the court." *Perdue v. Coiner*, 156 W. Va. 467 (1973). The circuit court denying or granting relief in a habeas corpus proceeding must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. *State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997). To sustain his Petition, Petitioner must prove his claims by a preponderance of the evidence.

Further, upon review of the petition, exhibits, affidavits, or other documentary evidence, if a court is satisfied that a petitioner is not entitled to relief, the court may deny a petition for writ of habeas corpus without an evidentiary hearing. Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467 (1973); *State ex rel. Waldron v. Scott*, 222 W. Va. 122 (2008); W. Va. Code § 53-4A-7(a). However, upon denying a petition, the Court must make specific findings of fact and conclusions of law as to each contention raised by the Petitioner, and must provide specific findings as to why an evidentiary hearing was unnecessary. Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997); Syl. Pt. 4., *Markley v. Coleman*, 215 W. Va. 729 (2004); R. Hab. Corp. 9(a). On the other hand, if the Court finds "probable cause to believe that the petitioner may be entitled to some relief . . . the court shall promptly hold a hearing and/or take evidence on the contention or contentions and grounds (in fact or law) advanced . . . ." W. Va. Code § 53-4A-7(a).

When reviewing the merits of a petition for writ of habeas corpus, the Court recognizes that "there is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." Syl Pt. 2, *State ex rel. Scott v. Boles*, 150 W. Va. 453 (1966). Furthermore, specificity is required in habeas pleadings; a mere recitation of a ground for relief without detailed factual

4

support will not justify the issuance of a writ or the holding of an omnibus hearing. W. Va. Code § 53-4A-2; *Losh v. McKenzie*, 166 W. Va. 762, 771 (1981). "When a circuit court, in its discretion, chooses to dismiss a habeas corpus allegation because the petition does not provide adequate facts to allow the circuit court to make a 'fair adjudication of the matter,' the dismissal is without prejudice." *Markley v. Coleman*, 215 W. Va. 729, 734 (2004), see R. Hab. Corp. 4(c). However, rather than dismissing without prejudice the court may "summarily deny unsupported claims that are randomly selected from the list of grounds," laid out in *Losh v. McKenzie. Losh v. McKenzie*, 166 W. Va. 762, 771 (1981).

## I. Voluntariness of Plea

In this alleged assignment of error, Petitioner alleges that he was mentally incompetent at the time of the plea taking, that there was insufficient evidence to secure his conviction, and that the colloquy "described a circumstance that was a basis for a defense, potentially complete or imperfect self-defense that could have been brought before the petit jury."

### a. Mental competence at the time of the plea taking

The Petitioner alleges that his plea agreement was not entered into voluntarily, asserting that he was under the influence of medication that diminished his ability to fully understand his plea. Petitioner asserts that his constitutional due process rights were violated because he was convicted for a crime while mentally incompetent.

In *Call v. McKenzie*, 220 S.E.2d 665, 159 W.Va. 191 (1975), the Supreme Court of Appeals of West Virginia stated that when taking a defendant's plea, "[a] trial court should spread upon the record . . . relevant matters [such as drug use] which will demonstrate to a . . . trial court proceeding in Habeas corpus that the defendant's plea was knowingly and

5

intelligently made with due regard to the intelligent waiver of known rights." The Court further stated that when a "knowing and intelligent waiver is conclusively demonstrated on the record, the matter is Res judicata in subsequent actions in Habeas corpus."

In the case at hand, the Court questioned the Petitioner regarding these relevant matters prior to accepting the Petitioner's plea. On December 3, 2010, the Court specifically asked the Petitioner, "Are you now under the influence of any medication, drug, or alcohol?" When the Petitioner responded, "Medication but not that would impair my judgment," this Court continued, "Any medication that would interfere with your understanding of my questions in any way?" The Petitioner responded, "No, ma'am." The Court then turned to Petitioner's counsel and asked, "Are you satisfied we can proceed[?]" to which counsel responded, "Yes, I am, your Honor."

*State v. Cheshire*, 292 S.E.2d 628, 170 W.Va. 217 (1982), states that to be competent to plead guilty, "a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." In the case at hand, it is clear from the record that the Petitioner not only consulted with his lawyer before entering his plea but was also competent to enter his plea. At the onset of the hearing, the Court asked the Petitioner, "are you sure this is what you want to do?" After the Petitioner responded, "Yes, ma'am," the Court asked, "Have you been discussing this option with your counsel very recently or for quite a while?" Counsel for the Petitioner responded, "It was always something that was an option but most recently with this particular offer we discussed it very seriously over the last

6

two weeks I would say." The Court then asked the Petitioner if he had consulted any of his family members - to which the Petitioner responded, "Yes, ma'am."'

Later in the hearing, counsel for the Petitioner addressed the Court and said, "Your Honor, after consultation with [the Petitioner] he is prepared to enter a guilty plea." Shortly thereafter, the Court asked the Petitioner if he "need[ed] additional time to consult with your counsel or family before we proceed with this?" - to which the Petitioner responded, "No, we're good."' The Court also asked the Petitioner, "have you had an opportunity to discuss the charges in this indictment that was returned September 2010 with your counsel[?]" After the Petitioner responded, "Yes, ma'am," the Court turned to Petitioner's counsel and asked, "have you fully explained to [the Petitioner] the essential elements of the charged offenses and any lesser included offenses?" to which counsel for the Petitioner responded in the affirmative.

Lastly, just prior to accepting the Petitioner's plea, the Court addressed counsel for the Petitioner and asked, "I know we've been over this before but I'll specifically ask the question do you believe [the Petitioner] understands his rights and the consequences of his plea and he voluntarily, intelligently, knowingly, and freely enters it here today?" After hearing counsel for the Petitioner answer in the affirmative, the Court asked the Petitioner if he agreed - to which the Petitioner answered, "Yes, Ma'am."'

Now Petitioner requests that this Court find that his plea agreement was not entered voluntarily. Petitioner fails to offer any proof in the way of medical evidence, doctor's testimony, or any other evidence that would tend to support his assertion. This court cannot therefore replace its judgment for the sentencing court's judgment that the Petitioner was truthful in asserting his mental competency at the hearing at issue. The sentencing court made

7

such decisions based upon in-person observation and questioning and this Court will not edit those findings without convincing evidence. Here, the Petitioner offers none. Further, because the sentencing court conclusively demonstrated a knowing and intelligent waiver, the matter is Res judicata and offers no relief to the Petitioner here. As such, the Petitioner's prayer for relief on this ground must be denied.

b. Evidence sufficient to obtain a conviction and actual guilt

Petitioner further alleges that insufficient evidence and the Petitioner's telling of the facts show that the plea was not knowingly, intelligently, and voluntarily made. Specifically, the Petitioner alleges that during his colloquy with the Court, he asserted the affirmative defense of self-defense. The Petitioner goes on to allege that the Court was in error in allowing the colloquy to continue and that by allowing it to continue, the Petitioner's *Alford* plea was not knowing, intelligent, and voluntary. Petitioner's argument is based upon a misunderstanding of the seminal case, *North Carolina v. Alford*. Petitioner asserts,

> Petitioner's plea was an acceptance of the factual underpinning that he had been the mechanism by which his father's life ended. However, part and parcel with this factual description was an affirmative defense, essentially a battered person's defense triggering a righteous or imperfect self-defense argument. Given the long standing relationship between the decedent and the Petitioner, it is not difficult to imagine that the petit jury would have been persuaded to consider such a defense …

Petitioner now asserts that such a plea is not supported by law and a constituted a violation of his due process rights. However, an *Alford* Plea (or a *Kennedy* Plea under West Virginia case law), provides for exactly this kind of situation.

> Under the facts of this case we find that the trial court abused his discretion when he rejected the plea agreement in order to

8

vindicate the *defendant's* rights. The case of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) stands for the proposition that a guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant is not coerced within the meaning of the Fifth Amendment simply because it was entered into to avoid the possibility of a significantly higher penalty. The Supreme Court held that there is no bar to imposing a prison sentence upon an accused who is unwilling to admit guilt but who is willing to waive trial and accept the sentence. An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.

*Kennedy v. Frazier,* 178 W. Va. 10, 12, 357 S.E.2d 43, 45 (1987).

Here, the Defendant did just that. Not only was the Petitioner's plea knowing, intelligent, and voluntary, it was, as counsel for the Petitioner put it, "a compromise plea," "outcome driven," and "an appropriate resolution." The Petitioner was faced with a 15 Count indictment and an 8 Count indictment. In exchange for the Petitioner's guilty plea to the charge of Murder in the First degree, the remaining Counts of both Indictments were dismissed; charges that, as counsel for the Petitioner put it, were "somewhat stronger" and "much more likely to get a conviction."

In addition to the Petitioner's guilty plea being strategic and in his best interest, the record strongly evidences his guilt. Despite the Petitioner's story that he acted somewhat in self-defense, counsel for the Petitioner also repeatedly informed the Court that there was also evidence that would "detract from the strength of [the Petitioner's] self-defense claim." In the case at hand, the State addressed the Court and announced "that it could prove by competent and credible testimony" that: 1) the Petitioner and the victim lived together, but that after an

altercation the Petitioner moved out and the victim purchased deadbolt locks; 2) nobody saw the victim after he purchased the locks, but that the Petitioner was seen moving back into the victim's residence two days after the altercation; 3) the victim's body had been transported in the victim's own truck and that blood was found in the truck as well as on blood-stained carpet in the back of the truck; 4) the victim's body had been dumped on the side of a mountain; 5) the Petitioner was seen purchasing two new rugs which were laid in the victim's residence and believed to have been part of a cover up; and 6) the Petitioner fled to Florida where he used false names and told inconsistent stories with regard to the victim's whereabouts. The State also announced that testimony would prove that the victim's body had been shot four times in the torso, some in the front and some in the back.

After the State's recitation, the Court confirmed with the Petitioner that he still wished to plead guilty under *Alford* circumstances and that he was making his plea freely and voluntarily. Only then was the Petitioner's plea accepted by the Court. Accordingly, this Court finds that the sentencing court properly accepted the Defendant Petitioner's plea under *Alford* circumstances. For all these reasons, the Petitioner's prayer for relief on this ground must be denied.

II.     Mental Competence At The Time Of The Offense

For his second assignment of error, Petitioner avers that he was not mentally competent at the time of the murder. "Through the affirmative defenses of voluntary intoxication and self-defense, Mr. Tamburo, III would have been able to assert a cogent, persuasive defense against the charge of the murder in the first degree." Again, Petitioner misunderstands the procedure of plea negotiations.

10

Voluntary intoxication and self-defense are affirmative defenses. The time for the accused to present evidence of an affirmative defense is at trial, however, when the accused enters a plea of guilt, he waives his right to present such evidence and make such claims and requests.

Mr. Tamburo had the opportunity to assert these defenses but weighted the risks of trial and chose to enter into a plea agreement thereby waiving his right to a jury trial and these defenses. Prior to accepting the Petitioner's voluntary, intelligent, and knowing plea, the Court asked the Petitioner, "Do you understand you have a right to consult with your lawyer and have your lawyer prepare a defense and have your lawyer represent you at trial?" - to which the Petitioner responded, "Yes," The Court also asked the Petitioner, "Do you understand by entering this plea of guilty under *Alford* circumstances you're giving up any defenses you have to this charge?" Again, the Petitioner responded, "Yes." Accordingly, the Petitioner is entitled to no relief under Assignment II of the Petition.

III.    Appeal of Plea

For his third assignment of error, Petitioner complains that his trial counsel failed to assert an appeal.

> Although seemingly incongruent with the resolution via the binding plea agreement, the petitioner still had a right to be informed fully about his appellate rights. Furthermore, an appeal should have been filed on his behalf if the same was desired.

Petitioner does not allege that an appeal was desired, nor does Petitioner expand on what grounds should have been pursued. Petitioner acknowledges that an appeal was incongruent with the resolution, considering that the Petitioner waived his defenses and entered into a plea

11

agreement, but nakedly asserts that his trial counsel failed to pursue an appeal. As such, his assertion is no more than an inaccurate hypothetical statement. Accordingly, this Court cannot find any error which would arise to a constitutional violation and therefore no relief can be granted on this ground.

### IV. Prosecutorial Statements

In his fourth assignment of error, "Petitioner asserts that the Prosecutor made prejudicial statements to the Court through the introduction of a coerced letter from the Petitioner." Specifically, the Petitioner alleges that during the sentencing hearing, the Prosecutor introduced a letter written by the Petitioner that was referred to as "impeachment material" and placed before the Court to be considered, if desired, by the parole board. The Petitioner does not assert that the letter was coerced by the State or law enforcement. Nor does Petitioner assert that the sentencing Court erred. Petitioner fails to cite any case law to support his alleged ground of error.

First, because the letter was written by the Petitioner, it is a statement of the Petitioner, not a statement of the Prosecutor. Second, this letter was not produced at trial, but at a sentencing hearing and was not used for sentencing. If the Petitioner wishes to suppress his own letter in a parole hearing in the future, he will have to address its admissibility there. Accordingly, no manifest injustice resulted, no statement of prosecutorial misconduct occurred, and no error of constitutional proportions transpired. As such, the Petitioner fails to state a cognizable claim in Assignment IV.

### V. Effective Assistance of Counsel

Petitioner claims that his conviction was unconstitutional because he received ineffective assistance of counsel, alleging that the strategy seemingly changed whereby the considerations of

12

pleading versus trial changed. Petitioner does not deny that the decision to accept or reject a plea offer was in the hands of the Petitioner, but states that "it was less than clear as to his desire to stand upon the plea offer as purportedly agreed." Petitioner now asserts that he did not have a meaningful defense because "there is no indication that ... any expert ... had been secured by his trial counsel [and that] there was insufficient pre-trial investigation." However, Petitioner fails to state what expert or investigation should have taken place, how the failure to do so amounted to ineffective assistance of counsel, or how the result of the proceedings would have been different if defense counsel had undertook such actions.

This Court reviews claims of ineffective assistance of counsel under the following two-part test: whether

> (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 74 (1984); *State v. Miller*, 459 S.E.2d 114 (W.Va. 1995). Then, to determine whether performance was deficient,

> courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.

*State v. Miller*, 459 S.E.2d 114 (W.Va. 1995). Accordingly, petitioners have the burden of showing that no other reasonable attorney would have acted as their counsel did under the same circumstances. *Id.*

13

Petitioner failed to meet this burden. Giving trial counsel's judgment the allotted "heavy measure of deference," this Court cannot second guess trial counsel's strategic advice in hindsight. Further, Petitioner has failed to show how the outcome of this case would have been different, but-for the actions of trial counsel. Last, and most importantly, the decision of whether to reject or accept the offered plea, was squarely in the hands of the Petitioner and it appears the Petitioner made a shrewd decision. According to the State's brief,

> If the Petitioner had been found guilty on each remaining Count, and the sentences were to be run consecutive, the Petitioner would have faced not less than 22 nor more than 125 years. On top of whatever sentence the Petitioner would have received for the Murder charge (10-40 years for Second Degree Murder), the Petitioner would not have been eligible for parole until he had served at least 32 years. Under the State's plea offer, which is the sentence the Petitioner is currently serving, the Petitioner is eligible for parole after serving only 15 years; less than half of the time.

This calculation, coupled with defense counsel's assertions that this was "a compromise plea" and "outcome driven," demonstrate that Defendant's guilty plea was indeed, "an appropriate resolution." For all these reasons, the Petition cannot be supported by Assignment V.

VI.    Severity of Sentence

Petitioner's sixth and final assignment of error asserts that his sentence was more severe than expected and excessive in nature in violation of Article III, Section 5 of the West Virginia Constitution. Specifically, the Petitioner alleges that he did not fully understand the ramifications of his decision, felt bullied into taking the plea offer, and believed he would receive multiple consecutive sentences for prescription fraud and uttering charges attendant to the murder charge.

14

Petitioner correctly states that a life sentence is the only sentence contemplated by statute for the crime of Murder in the First Degree. W.Va. Code § 61-2-2. In the case at hand, the Petitioner plead guilty under *Alford* circumstances to the charge of Murder in the First Degree. In accordance with the plea agreement, the Petitioner was sentenced to life in prison, but with a recommendation of mercy. The Petitioner claims that his sentence was excessive, but the only two sentences available to the Petitioner was either a life sentence without mercy or a life sentence with mercy. Pursuant to a counseled and negotiated plea agreement, Petitioner received a less severe sentence than the only alternative. In addition, the remaining Counts in both Indictments were dismissed in consideration of the plea.

Petitioner now claims that he believed he would receive multiple consecutive sentences for prescription fraud and uttering charges attendant to the murder charge. A review of the transcripts show that counsel for the Petitioner and the Court made it abundantly clear to the Petitioner that he was only being found guilty of one charge, Murder in the First Degree, and would thus be receiving only one sentence, life in prison with a recommendation of mercy. The Petitioner was also informed by the Court of the chance that despite the recommendation of mercy, he could spend the rest of his life in prison. Upon each question in colloquy, the Petitioner answered that he understood the terms of the agreement, his rights, and what rights he was waiving. This Court finds no evidence to support Petitioner's claim that his sentence was more severe than expected but finds every reason to believe the Petitioner was well informed and understood the sentence he bargained for. For these reasons, the Petitioner's prayer for relief on this ground must be denied.

15

THEREFORE, even if the issues raised in the instant Petition were not waived by failure to bring the same in an appeal, Petitioner has failed to carry his burden in the instant case and is not entitled to relief on those grounds as a matter of law. Therefore, those issues will not be further addressed by this Court in any proceedings. After a full review of the petition, exhibits, affidavits, and all documentary evidence, this Court is satisfied that a petitioner is not entitled to relief, and finds that the record would not be aided by taking evidence and hearing argument for the reasons set forth above.

Therefore, it is ADJUDGED and ORDERED that the Petition for Writ of Habeas Corpus Ad Subjiciendum is DENIED and DISMISSED WITH PREJUDICE. The Court notes the timely exception of all parties to any and all adverse rulings herein contained. This is a FINAL ORDER. Any aggrieved party may exercise his or her right to appeal to the West Virginia Supreme Court of Appeals as provided for by the West Virginia Code. The Clerk shall enter the foregoing as the date written below and shall transmit attested copies to all counsel of record.

CC: 3-14-14
PA
Colvin

ENTER this 13 day of March, 2014.

_____
MICHAEL D. LORENSEN, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT

A TRUE COPY, ATTEST:

_____
Clerk of the Circuit Court
of Morgan County, West Virginia

By Helen V. Morris